UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
UNITED STATES OF AMERICA,           )
                                    )
                                    )
v.                                  )   Criminal Action
                                    )   No. 16-10096-PBS
CHRISTOPHER WILKINS,                )
                                    )
                Defendant.          )
_____)

**MEMORANDUM AND ORDER**

April 27, 2017

Saris, C.J.

Christopher Wilkins, who has been charged in a multi-count indictment for his involvement in a drug trafficking organization in Cape Cod, moves to suppress evidence derived from the Title III wiretaps of Target Telephones (TT) 9 to 17. Docket No. 373. Wilkins argues that the affidavits submitted in support of the wiretap applications failed to establish necessity, as required by 18 U.S.C. § 2518(1)(c). The Court previously allowed co-defendants Denzel Chisholm and Browning Mejia to join Wilkins' motion. Docket Nos. 465, 470.

The government made a sufficient showing of necessity in its wiretap applications. Wilkins' motion to suppress (Docket No. 373) is **DENIED**.

1

**DISCUSSION**

The charges in this case arise from an alleged drug trafficking organization ("DTO") led by Denzel Chisholm and Christian Chapman that distributed cocaine, fentanyl, and heroin in Cape Cod. Federal authorities conducted a wiretap investigation of the drug trafficking organization from October 2015 to April 2016. Title III wiretaps were authorized on seventeen target telephones (TT 1 to 17) belonging to seven different persons.

Wilkins seeks to suppress evidence derived from TT 9 to 17. He argues that the government lacked necessity to wiretap those phones because the goals of the investigation had already been accomplished by the time those wiretaps were sought. Wilkins' motion calls for an inquiry into the affidavits supporting two wiretap applications. The February 24, 2016 affidavit supported an application to renew the wiretap on TT 9 and initiate wiretaps on TT 10 to 15. Docket No. 452-4. The March 23, 2016 affidavit supported an application to renew the wiretaps on TT 11 and 15 and to initiate wiretaps on TT 16 and 17. Docket No. 452-5.

Wilkins also argues that to the extent any of the government's investigative goals were not accomplished, the wiretap applications were nonetheless invalid because the

investigative goals were overly broad and calculated to manufacture necessity.

Wilkins does not argue that the government lacked probable cause for any of the wiretaps. Nor does Wilkins challenge any evidence derived from the earlier wiretaps in the investigation.

## I. Legal Framework

A Title III wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This provision is known as the necessity requirement. United States v. Cartagena, 593 F.3d 104, 109 (1st Cir. 2010). The First Circuit "ha[s] interpreted that provision to mean that the statement should demonstrate that the government has made 'a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls.'" United States v. Villarman-Oviedo, 325 F.3d 1, 9 (1st Cir. 2003) (quoting United States v. Hoffman, 832 F.2d 1299, 1306-07 (1st Cir. 1987)). "[T]he government is not required to show that other investigative methods have been wholly unsuccessful, nor must the government exhaust all other investigative measures before resorting to wiretapping." Cartagena, 593 F.3d at 109. In reviewing the government's

3

showing of necessity, the question is whether "the facts set forth in the application were minimally adequate to support the determination that was made." United States v. Rose, 802 F.3d 114, 118 (1st Cir. 2015) (quoting United States v. Yeje-Cabrera, 430 F.3d 1, 7 (1st Cir. 2005)).

To meet this standard, "the government's affidavit must show with specificity why ordinary means of investigation will fail; conclusory statements without factual support are not sufficient." United States v. Lopez, 300 F.3d 46, 53 (1st Cir. 2002). "[B]are conclusory statements that normal techniques would be unproductive, based solely on an affiant's prior experience," are insufficient. United States v. Ashley, 876 F.2d 1069, 1072 (1st Cir. 1989).

## II. **February 24, 2016 Affidavit**

The February 24, 2016 affidavit was submitted in support of the government's application for wiretaps on TT 9 to 15. A thirty-four page section of the affidavit explained at length the need for interception. The affidavit described the partial success achieved thus far, including controlled purchases from Wilkins, identification of additional target subjects, a determination that Chapman and Chisholm were distributing narcotics to lower-level dealers, and identification of addresses for a number of stash houses. Docket No. 452-4 ¶ 162. The affidavit explained that despite the partial success, there

4

was still insufficient evidence to prove the guilt of Wilkins, Chisholm, and Chapman beyond a reasonable doubt, particularly with regard to money laundering and firearm charges. Docket No. 452-4 ¶ 163-64. The affidavit described with specificity the ordinary investigative techniques used thus far, including undercover agents, confidential sources and cooperating witnesses, a grand jury investigation, pen registers, physical surveillance, and other investigative techniques (such as tracking devices, trash searches, and search warrants). Docket No. 452-4 ¶¶ 167-232. The affidavit explained the limitations of those ordinary investigative techniques in the context of this particular investigation, describing the tight-knit nature of this particular DTO that made it difficult for outsiders to infiltrate, Docket No. 452-4 ¶ 167; the violent nature of the DTO, which made confidential sources reluctant to testify, Docket No. 452-4 ¶ 209; and the DTO's storage of contraband in alternative locations that were not as susceptible to search warrants, Docket No. 452-4 ¶ 230. The affidavit concluded that wiretaps were necessary because those traditional investigative techniques had been unsuccessful in ascertaining the full scope of this DTO and in securing the identities of all the individuals involved. Docket No. 452-4 ¶ 240.

The government's affidavit contains detailed facts about the need for wiretaps in this particular investigation, and it

5

easily meets the "minimally adequate" showing, Rose, 802 F.3d at 118, required under § 2518(1)(c). Indeed, Wilkins does little to challenge the government's showing that investigators had attempted a whole range of traditional investigative techniques. Rather, Wilkins argues that by February 24, 2016, investigators had already achieved their investigative goals. But while investigators had conducted controlled purchases from Wilkins by this time, investigators had not fully identified Wilkins' suppliers and did not have the same amount of evidence against other high-level members of the DTO. Docket No. 452-4 ¶ 226. The First Circuit's decision in United States v. Cao, 471 F.3d 1 (1st Cir. 2006), is on point. There, the First Circuit faced a similar challenge to wiretap necessity and wrote: "The affidavit in support of the wiretaps made clear that although the investigation had secured much information through conventional means, some of the sources of [drug] supply and some of the other participants had not been identified; and, partly because of the precautions (e.g., avoiding surveillance, changing of phone numbers) taken by conspirators, the wiretaps remained essential. The affidavit also explained why changed conditions made the confidential informants of little use in further investigations. Plainly the partial success of the investigation did not mean that there was nothing more to be done." Id. at 3; see also United States v. Albertelli, 687 F.3d 439, 444 (1st

Cir. 2012) (reiterating that "partial success of the investigation" did not preclude continued wiretap); Villarman-Oviedo, 325 F.3d at 10 ("Even though a New York confidential informant had enabled the agents to identify some of the main co-conspirators, that informant lacked sufficient contacts to develop information about the structure of the organization in Puerto Rico. . . . With the government still unaware of the identity of many of the conspiracy's members as well as the organizational structure of the conspiracy, the district court could permissibly allow the government to employ electronic surveillance to uncover the complete range of operations of the target conspiracy."). Here too, the necessity requirement was met.

### III. March 23, 2016 Affidavit

The March 23, 2016 affidavit was submitted in support of the government's application for wiretaps on TT 11 and 15 to 17. A thirty-two page section of the affidavit explained, at length, the need for interception. The affidavit described the partial success achieved thus far, which exceeded the partial success described in the government's February 24, 2016 affidavit. Since the earlier affidavit, the government had made controlled buys from Chisholm and developed sufficient evidence to charge Wilkins and Chisholm, among other members of the DTO. Docket No. 452-5 ¶¶ 102–03. However, investigators had not developed

7

sufficient evidence to charge Chapman. Docket No. 452-5 ¶ 103. The affidavit explained that the continued wiretap of Chapman was necessary to develop sufficient evidence against him because leaders of DTOs such as Chapman do not usually keep large quantities of drugs inside their own homes and a wiretap was necessary to connect Chapman to stash houses. Docket No. 452-5 ¶ 103. The affidavit also explained that the continued wiretap of Chisholm was necessary to obtain evidence against Chapman since Chapman frequently switches phones. Docket No. 452-5 ¶ 103. The affidavit then set out examples of traditional investigative techniques that had been tried since the February 24, 2016 affidavit, including confidential informants, pen registers, physical surveillance, and vehicle stops. Docket No. 452-5 ¶ 104. The government met the necessity requirement.

Wilkins relies on the statement in United States v. Cellini that "interceptions must cease once the objective of the warrant has been achieved" and "further investigation to improve prosecution evidence is too broad a standard to be consistent with the objectives of Title III." No. 08 CR 888-4, 2009 WL 2601335, at *5 (N.D. Ill. Aug. 21, 2009). But Cellini itself recognized that "there is no requirement to cut short an investigation that might well turn up more persuasive evidence and more bad actors." Id. Here too, further wiretap surveillance was necessary to obtain sufficient evidence to charge Chapman.

## IV. Specificity of Affidavits in Describing Inadequacy of Traditional Investigative Techniques

To the extent that Wilkins argues that the investigative objectives in the affidavit were overly broad, the above sections describe the particular and reasonable investigative objectives that had not yet been achieved at the time of each of the challenged affidavits. In the alternative, Wilkins also appears to argue that the affidavits did not explain with sufficient specificity the inadequacy of traditional investigative techniques.

Wilkins relies principally on United States v. Blackmon, in which the court suppressed wiretap evidence after finding that the affidavit in support of the wiretap application "contain[ed] generalized statements that would be true of any narcotics investigation [and] fail[ed] to contain sufficiently specific facts to satisfy the requirements of § 2518(1)(c)." 273 F.3d 1204, 1211 (9th Cir. 2001). Blackmon is inapposite. The wiretap application in Blackmon described "the inherent limitations of" traditional investigative methods without a specific explanation of "why, in the particular case at hand, these inherent limitations will be insufficient." Id. at 1210. The wiretap application in Blackmon was inadequate because it contained nothing more than "boilerplate assertions [that] are unsupported by specific facts relevant to the particular circumstances of

9

this case and [that] would be true of most if not all narcotics investigations." Id.

The same cannot be said of the wiretap applications in this case. The challenged affidavits described in detail the traditional investigative techniques that had already been used and provided specific explanations of why wiretaps were necessary for this particular investigation. For example, the affidavits stated that undercover activity was not fruitful because this DTO was tight-knit and investigative targets appeared to only associate with a finite set of persons known to them, and because the DTO was attempting to "lay low" because of a recent murder. Docket No. 452-4 ¶¶ 167–68. Most of the information that the confidential sources had been able to provide was historical, and all but one of those sources refused to testify, in part due to the violent nature of this particular DTO. Docket No. 452-4 ¶ 209. While extensive physical surveillance had allowed investigators to identify relationships and potential targets, investigators sought to obtain direct evidence of narcotics or firearms trafficking. Docket No. 452-4 ¶¶ 220–21. Finally, traditional methods of investigation had shown that the DTO largely carried out its drug distribution via telephone. Docket No. 452-4 at ¶ 241. The affidavits gave a concrete explanation of what had and had not been achieved by traditional investigative techniques, rather than describing, in

abstract terms, the inherent limitations of those techniques. The wiretap applications met the necessity standard with sufficient specificity.

**ORDER**

Wilkins' motion to suppress (Docket No. 373) is **DENIED**.

/s/ PATTI B. SARIS_____
Patti B. Saris
Chief United States District Judge