UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
Christopher Wilkins,               )
                                   )
            Petitioner,            )
                                   )
v.                                 )   Criminal Action
                                   )   No. 16-10096-PBS
UNITED STATES OF AMERICA,          )
                                   )
            Respondent.            )
_____)

**MEMORANDUM AND ORDER**

February 3, 2020

Saris, D.J.

**INTRODUCTION**

Pro se petitioner Christopher Wilkins moves under 28 U.S.C. § 2255 to challenge his conviction for drug trafficking on grounds of ineffective assistance of counsel. Specifically, Wilkins alleges that he would have gone to trial if his counsel had not been ineffective and would not have pleaded guilty on May 9, 2017 to conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o). After a review of the record, the Court **DENIES** the motion (Docket No. 1149).

1

**BACKGROUND**

I. **Investigation**

This case arises from an investigation into a large-scale drug trafficking organization that distributed cocaine, fentanyl, and heroin on Cape Cod. See Docket No. 518 at 2. Title III wiretaps were authorized on seventeen target telephones belonging to seven different persons, including Wilkins. Id. Intercepted calls and texts indicated that Wilkins was involved in numerous heroin and cocaine transactions. Presentence Report ("PSR") ¶¶ 106-130. In addition, several controlled drug purchases were made from Wilkins. Id.

One of Wilkins's customers was Benjamin Roderick, who had been intercepted repeatedly over Wilkins's telephones purchasing heroin from Wilkins for further distribution. PSR ¶ 131. On March 7, 2016, in a series of intercepted text messages, Wilkins agreed to purchase a gun from Roderick by trading 10 grams of heroin for a .38 revolver. PSR ¶¶ 131-32. While driving to the agreed-upon location for the exchange, Wilkins called Roderick and changed the meeting place because he realized he was being followed. PSR ¶ 133. Then, shortly before the two men were to meet, Wilkins told Roderick in a call that the "boys," meaning police, had arrived. PSR ¶ 133. The police proceeded to stop Roderick's car, and recovered a Smith and Wesson .38 caliber

revolver and five rounds of ammunition from Roderick's pants pocket. PSR ¶ 134.

A search warrant was executed at Wilkins's residence on April 5, 2016. Docket No. 401 at 16. During the search, authorities recovered a Sturm Ruger firearm, ammunition, and drug packaging materials. Id. Wilkins was arrested the same day and was charged in a multi-count indictment for his involvement with the drug trafficking organization. PSR ¶¶ 1-2.

## II. Motions to Suppress

On February 17, 2017, Wilkins's counsel filed a motion to suppress the evidence obtained during execution of the search warrant, Docket No. 37, and a motion to suppress all evidence obtained as a result of the wiretaps, Docket No. 373. On April 27, 2017, the Court entered an order denying Wilkins's motion to suppress the wiretap evidence. Docket No. 518. The Court held that the government had made a sufficient showing of necessity in its wiretap applications. Docket No. 518 at 11.

## III. Plea and Sentencing

### A.  Binding Plea Agreement

On May 9, 2017, Wilkins entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Docket No. 580. In the agreement, Wilkins agreed to plead guilty to fourteen counts against him: conspiracy to distribute and possess with the intent to distribute 100 grams or more of

heroin (lesser-included offense), in violation of 21 U.S.C. § 846 (Count 1); possession of heroin with the intent to distribute and distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts 6-13, 17); conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count 19); conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count 25); possession of cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 27); and, conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h) (Count 34). Docket No. 580 at 1-2.

In the plea agreement, the parties agreed that, in accordance with USSG § 2D1.1, based on the drug amounts attributable to him, Wilkins's base offense level was 26. Id. at 3. The parties also agreed that the defendant should receive a two-level enhancement for possession of a dangerous weapon pursuant to USSG § 2D1.1(b)(1),; a two-level enhancement for maintaining a drug stash house pursuant to USSG § 2D1.1(b)(12); another two-level enhancement for defendant's conviction under 18 U.S.C. § 1956; and a three-level reduction for Wilkins's acceptance of personal responsibility pursuant to USSG § 3E1.1. Id. at 3-4. Therefore, the parties agreed that Wilkins's total offense level should be 29. The parties also agreed that an

appropriate sentence involved incarceration for a period between 96 and 136 months. Id. at 5. While in the agreement Wilkins waived many of his rights to appeal, including the right to appeal a sentence in the agreed upon range, he reserved the right to pursue an ineffective assistance of counsel claim. See id. at 5-6.

## B.    Rule 11 Hearing

The Court held a Rule 11 hearing on May 9, 2017. Docket No. 708. At the hearing, the Court explained to Wilkins that the so-called "C plea" was binding on the defendant. Id. at 4:25-5:8. In response to the Court's questions, Wilkins stated that he had read the plea agreement and the charges against him, and that he was satisfied with his attorney. Id. at 6:17-21, 8:15-17. The government explained the penalties for each count, including a mandatory minimum sentence of five years for Count 1. Id. at 9:16-10:19. The government explained that Count 19, conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o), did not have a mandatory minimum but carried a maximum penalty of incarceration for no more than 20 years, up to three years of supervised release, and a fine of up to $250,000. Id. 10:8-12. The government clarified that it was not pursuing a five-year mandatory minimum sentence under 18 U.S.C. § 924(c) because Wilkins never took possession of the gun he sought to buy from Roderick. See id. 13:11-21.

5

During the plea colloquy, the Court reviewed the rights Wilkins would be giving up by pleading guilty, and specifically mentioned the still-pending motion to suppress evidence obtained as a result of the search warrant, stating:

> THE COURT: Yes, and let me just say for the record, I've now had several motions to suppress, including one from you, Mr. Wilkins, which I haven't ruled on, and you're giving up the right to that motion to suppress as well. Do you understand that?
>
> THE DEFENDANT: Yes.

Id. at 13:24 – 14:4. The government then stated the evidentiary basis for each count. As to Count 19, the government stated that had the case gone to trial, it would show that:

> Defendant Benjamin Roderick called Wilkins and asked to sell him a firearm, a .38 caliber revolver. Wilkins agreed to this deal and agreed to trade 10 grams of heroin for Roderick. Investigators then watched as the two sort of drove near each other, planning to meet in Hyannis. Before the deal could actually commence, investigators pulled over Roderick's car, and the .38 caliber revolver was seized from Roderick.

Id. at 17:13-20. Wilkins proceeded to plead guilty to each count, including the lesser-included offense in Count 1, triggering a five-year mandatory minimum. See id. at 26:21-29:6.

### C. Presentence Investigation Report

In preparation for sentencing, U.S. Probation and Pretrial Services produced a presentence investigation report about Wilkins. To calculate Wilkins's baseline offense level, Probation grouped Counts 1, 6-13, 17, 19, 25, 27, and 34. PSR ¶

232. Per USSG § 3D1.3(a), Probation used the offense level for the most serious count in the group, Conspiracy to Launder Monetary Instruments. Id. The base offense level for that count was 28, based on the drug amount Probation attributed to Wilkins. See USSG § 2S1.1; id. § 2D1.1(c)(6); PSR ¶¶ 234-38. Probation applied a two-level enhancement under USSG § 2D1.1(b)(1), for possession of a dangerous weapon in connection with the offense. PSR ¶ 239. Probation based this enhancement on Wilkins's attempted sale of drugs in exchange for Roderick's gun in March 2016, and on Wilkins's possession of a knife at the time of his arrest in March 2015. Id.

Probation calculated Wilkins's total offense level to be 29 with a criminal history category of IV, producing a guideline sentencing range of 121 to 151 months. PSR ¶¶ 249, 261, 301. Wilkins objected to several aspects of the PSR, and in his sentencing memorandum objected to Probation's guideline calculations on the basis that he was improperly held responsible for 500 grams of cocaine. See Docket No. 878 at 2. However, Wilkins did not object to Count 19 or to the two-level enhancement under USSG § 2D1.1(b)(1).

    **D.   Sentencing Hearing**

At sentencing on September 18, 2017, the Court began by noting Wilkins's disagreement with the way Probation calculated the guidelines and asking defense counsel whether Wilkins still

wished to be bound by the (C) plea. See Docket No. 948 at 2:12-25. Wilkins's attorney responded that Wilkins still wanted the Court to accept the plea agreement. Id. The Court noted that based on a total offense level of 29 and a criminal history category of IV, the guidelines range was 121 to 151 months, but proceeded to accept the plea with a mandatory range of 96 to 136 months. Id. at 3:3-4, 11:11-20. The government recommended 136 months, see id. at 21:23-25, while Defendant asked the Court for a sentence of 96 months, see id. at 22:2-3. After hearing from the Defendant, the Court imposed a sentence of nine years (108 months), plus four years supervised release and a mandatory special assessment. See id. at 31:16-34:2.

In imposing the sentence, the Court focused on the "prolific heroin trafficking" activity, the level of violence Wilkins had been involved with, including "two separate guns," and the amount of money Wilkins laundered. See id. at 29-30. The Court also discussed mitigating factors such as Wilkins's childhood, family situation, and role in the drug trafficking conspiracy. See id. at 30-31.

## DISCUSSION

### I. Standard of Review

A federal criminal defendant "may petition for post-conviction relief under 28 U.S.C. § 2255(a) if, inter alia, the individual's sentence 'was imposed in violation of the

Constitution or laws of the United States' or 'is otherwise subject to collateral attack.'" Lassend v. United States, 898 F.3d 115, 122 (1st Cir. 2018) (quoting 28 U.S.C. § 2255(a)). "A claim of ineffective assistance of counsel . . . may be raised by means of a section 2255 motion." Rivera-Rivera v. United States, 844 F.3d 367, 372 (1st Cir. 2016). The defendant bears the burden of establishing his entitlement to relief. Lassend, 898 F.3d at 122.

"Evidentiary hearings on § 2255 petitions are the exception, not the norm," and the defendant bears "a heavy burden . . . to demonstrate that an evidentiary hearing is warranted." Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003). The court need not hold an evidentiary hearing if the petition "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Id. (quoting United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978)). Because the record in this case demonstrates that Wilkins's claim lacks merit, the Court declines to hold an evidentiary hearing.

## II. Ineffective Assistance of Counsel

### A. Legal Standard

When a criminal defendant asserts that he received ineffective assistance of counsel in deciding to plead guilty, he must demonstrate that "(1) 'counsel's representation fell

9

below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for counsel's errors [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" United States v. Luis Rivera-Cruz, 878 F.3d 404, 410 (1st Cir. 2017) (quoting Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985)). "[F]ailure to satisfy one prong . . . obviates the need for a court to consider the remaining prong." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 697 (1984)). The court may consider either prong first in the interest of efficiency. See Ortiz-Graulau v. United States, 756 F.3d 12, 17 (1st Cir. 2014).

Under the performance prong, the defendant must show that, "given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." Rivera v. Thompson, 879 F.3d 7, 12 (1st Cir. 2018) (quoting Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)). This analysis covers all the circumstances surrounding the challenged conduct or decision and requires "evaluating the attorney's conduct 'from counsel's perspective at the time' and in light of 'prevailing professional norms'" Id. (quoting Strickland, 466 U.S. at 688-89). Review of counsel's performance is "highly deferential" and subject to "a strong presumption that [it] falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. A defendant faces an

especially high burden in challenging counsel's tactical decisions. See Lucien v. Spencer, 871 F.3d 117, 129 (1st Cir. 2017).

The prejudice prong requires the defendant to establish a reasonable probability, meaning "substantial, not just conceivable," that he would not have pleaded guilty but for counsel's errors. Williams v. United States, 858 F.3d 708, 715 (1st Cir. 2017) (quoting Rivera-Rivera v. United States, 827 F.3d 184, 187 (1st Cir. 2016)). Reasonable probability is not quite the same as the more-likely-than-not standard, but the difference is "slight" and rarely matters. Harrington v. Richter, 562 U.S. 86, 111-12 (2011). In undertaking the prejudice analysis, courts do not rely solely on a defendant's "post hoc assertions . . . about how he would have pleaded but for his attorney's deficiencies." Lee v. United States, 137 S. Ct. 1958, 1967 (2017). Rather, they "look to contemporaneous evidence to substantiate [his] expressed preferences." Id. When the defendant's "decision about going to trial turns on his prospects of success and those are affected by the attorneys' error," he must also show that he "would have been better off going to trial." Id. at 1965.

**B. Analysis**

Wilkins raises three grounds for ineffective assistance of counsel. He argues that his attorney performed deficiently by

11

(1) allowing him to plead guilty to 18 U.S.C. § 924(o); (2) failing to contest the two-level sentence enhancement imposed pursuant to USSG § 2D1.1(b)(1); and (3) failing to challenge the admissibility of evidence. The Court considers each of these grounds in turn.

*1. Pleading Guilty to Section 924(o)*

Wilkins argues that his counsel was deficient in allowing him to plead guilty to conspiracy to possess a firearm in furtherance of a drug trafficking crime (Count 19). Wilkins claims that the evidence presented by the government did not support the charge. This argument stems from a misinterpretation of the elements required to prove a violation of 18 U.S.C. § 924(o).

Section 924(o) imposes penalties on a person who conspires to commit conduct described in 18 U.S.C. § 924(c)(1)(A). Initially, Section 924(c)(1)(A) punished the "use[]" of a firearm "during and in relation to any crime of violence or drug trafficking." Congress amended the statute in 1998 to also cover the possession of a firearm "in furtherance of" a crime of violence or drug trafficking. Watson v. United States, 552 U.S. 74, 77 n.3 (2007).

In Watson, the Supreme Court held that the "use" prong of Section 924(c)(1)(A) does not apply to an individual who received a firearm in exchange for drugs. Id. at 83. The Court

refrained from deciding whether such an individual would be covered by the new prong of Section 924(c)(1)(A), which sanctioned the possession of a firearm in furtherance of a violent or drug trafficking crime. Id.

Several circuit courts, including the First Circuit, have since held that exchanging drugs for firearms constitutes possession of a firearm in furtherance of a drug trafficking crime under Section 924(c)(1)(A). See United States v. Gurka, 605 F.3d 40, 43-45 (1st Cir. 2010); see also United States v. Miranda, 666 F.3d 1280, 1283-84 (11th Cir. 2012); United States v. Robinson, 627 F.3d 941, 955 (4th Cir. 2010); United States v. Doody, 600 F.3d 752, 755 (7th Cir. 2010); United States v. Gardner, 602 F.3d 97, 102 (2d Cir. 2010); United States v. Mahan, 586 F.3d 1185, 1189 & n.3 (9th Cir. 2009); United States v. Luke-Sanchez, 483 F.3d 703, 706 (10th Cir. 2007); United States v. Frederick, 406 F.3d 754, 764 (6th Cir. 2005).

Wilkins argues that his counsel erred in allowing him to plead guilty because he did not "use" a firearm during a drug trafficking crime. In support, Wilkins cites the Watson Court's analysis of the "use" prong of Section 924(c)(1)(A). That analysis is inapposite here. Under the First Circuit's interpretation of Section 924(c)(1)(A) as amended, Wilkins conspired to possess a firearm in furtherance of a drug trafficking crime, in violation of Section 924(o). There is no

13

indication that Wilkins's counsel violated "prevailing professional norms" by allowing Wilkins to plead guilty to Count 19. See Rivera, 879 F.3d at 12 (quoting Strickland, 466 U.S. at 688-89).

   *2. USSG § 2D1.1(b)(1) Sentence Enhancement*

Wilkins's claim of ineffective assistance of counsel with respect to the application of a sentence enhancement under USSG § 2D1.1(b)(1) also fails. Wilkins can satisfy neither the performance nor the prejudice prongs of Strickland on this ground.

Section § 2D1.1(b)(1) imposes a two-level sentence enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during a conspiracy to distribute controlled substances. The enhancement applies to a defendant who conspired to use or possess a firearm in furtherance of a drug trafficking crime, even if the defendant did not physically possess the firearm. See United States v. Greig, 717 F.3d 212, 219 (1st Cir. 2013) (explaining that the enhancement applies where it is "reasonably foreseeable that a co-conspirator would possess a weapon in furtherance of the criminal activity" and that "the defendant need not have possessed the weapon herself"); see also United States v. Martinez, 557 F.3d 597, 600 (8th Cir. 2009) ("[T]he trade of a firearm for drugs warrants the [Section 2D1.1(b)(1)] enhancement."); United States v. Smythe, 363 F.3d

14

127, 129 (2d Cir. 2004) ("[T]he quid pro quo exchange of drugs for firearms triggers the enhancement.").

Wilkins's counsel did not act unreasonably in declining to challenge the two-level enhancement. Though Wilkins did not take possession of Roderick's revolver during the March 2016 attempted sale, he did conspire to possess the revolver in furtherance of a drug trafficking crime.

Even if Wilkins could demonstrate deficient performance on this ground, he could not establish prejudice. Ample evidence indicates that Wilkins possessed other dangerous weapons in furtherance of drug trafficking crimes. Law enforcement seized a firearm, ammunition, and drug packaging equipment from Wilkins's home during the execution of a search warrant in April 2016. Docket No. 401 at 16. Wilkins was also in possession of a knife and 3.5 grams of heroin when he was arrested on March 12, 2015. PSR ¶¶ 207, 239.

*3. Alleged Failure to Challenge Admissibility of Evidence*

Finally, Wilkins claims that his counsel erred by failing to challenge the admissibility of evidence used against him. This allegation is without basis. The court evaluated and denied a motion to suppress wiretap evidence, a fact recognized by Wilkins during his plea colloquy. At this colloquy, Wilkins also acknowledged that by pleading guilty he would forfeit the opportunity for the Court to rule on the remaining motion to

15

suppress. Wilkins nevertheless chose to move forward with the plea. Given these facts, there is no indication that counsel's representation fell below a reasonable standard.

### ORDER

For the reasons stated above, Wilkins's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Docket No. 1149) is **DENIED**. Wilkins's Motion for Extension of Time (Docket No. 1148) is denied as **MOOT**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge